*221 OPINION.
Littleton :
We are of the opinion that the taxpayer is entitled to a deduction for 1920 of $48,078.19 as a loss sustained within the *222 year as a result of the advances made to the Sycamore Plantation Co. for lumber to be furnished by it. The taxpayer was not to be repaid the advances in money direct. Instead taxpayer was to receive lumber and, in making remittances to the Plantation Co., taxpayer, under the contract, deducted from the price at which the lumber was invoiced to it, among other sums, the amount of $30 or $35 a thousand feet, according to the grade of lumber. The contract between the parties provided that, in the event of failure of the Plantation Co. to fulfill its part of the contract, the taxpayer should take possession of all the lumber on hand and apply the same against the advances theretofore made. When the Plantation Co. became insolvent and ceased operations early in November, 1920, the taxpayer took possession of the lumber and found that it was of a value of $50,062.08. It therefore sustained a loss of $48,078.19, being the difference between the amount advanced against which the lumber was to be applied and the value of the lumber taken over.
The evidence convinces us that the debt of the American Harvester Co. was properly ascertained to be worthless and charged off within the year. The amount was therefore properly deducted from gross income.
The taxpayer claims that it should be allowed a deduction for 1920 of $41,400, the net amount of officers salaries paid or accrued within the year. The Commissioner contends that the amount arrived at by him represented reasonable compensation for the services rendered and that the amount authorized by the directors in excess of that amount represented a distribution of profits of the corporation. We have no evidence as to the character or extent of the services rendered by the taxpayer’s officers. The several resolutions constitute the only evidence relating to this issue. On January 5, the president’s salary was fixed at $800 a month and that of the vice president and treasurer at $400 a month. This was in excess of the salaries paid in the prior year. The company started the year 1920 without a surplus, after declaring a stock dividend of 20 per cent and a cash dividend of 81.93 cents. The company’s earnings during the first part of 1920 were large. On March 15 the directors authorized $30,000, special compensation, to be paid to Cornelius and Siegel upon the basis of their stockholdings of 51 per cent and 49 per cent, respectively. At that time J. A. Johnson was elected a director and vice president and his salary was fixed at $500 a month from January 1,1920. The record does not show that Johnson had been, theretofore, in the employ of the company. On April 26, 1920, the company’s earnings were still on the increase and the monthly salaries of Cornelius, Siegel, and Johnson were further increased to $1,300, $900, and $1,000, respectively, effective from January 1,1920. On May 7,1920, the president reported a surplus of $75,000. A stock dividend of 33½ per cent *223 was declared and the three officers were voted a further bonus of $3,000 each. These facts indicate that the directors were distributing the profits of the company in the guise of compensation. The Board is not warranted, upon the evidence submitted, in allowing a deduction for compensation of officers in excess of the amount determined by the Commissioner.
Judgment will be entered on 15 days’ notice, under Rule 50.